**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| YOLANDA LUCAS, as the Special Administrator of the Estate of MICHELLE ANN CADDELL, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-CV-601-TCK-CDL |
| v. | ) ) | |
| TURN KEY HEALTH CLINICS, LLC; and GARY MYERS, MD, | ) ) ) | |
| Defendants. | ) ) | |

---

### DEFENDANTS' MOTION FOR SANCTIONS AND BRIEF IN SUPPORT

---

Respectfully submitted,

**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones,** OBA #33541
**NORMAN WOHLGEMUTH LLP**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK 74103

**ATTORNEYS FOR DEFENDANTS**
**TURN KEY HEALTH CLINICS, LLC**
**AND DR. GARY MYERS, MD**

**June 27, 2023**

TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**BACKGROUND** ...............................................................................................2

**MATERIAL MISSTATEMENTS OF FACT** ....................................................4

    1. Misrepresentations of Dr. Myers' Orders on August 5, 2019..........................4

    2. Misrepresentation of Culture Lab and Follow-Up and Further Omission
       of Medication Orders. ..................................................................................4

    3. Misrepresentation of Myers' Notes in Medical Record and Omission of
       Care in Response to Complaints and Labs. ..................................................5

    4. False Allegations Regarding Dr. Myers' Medical Care up to August 15, 2019.............6

    5. Omission of Every Material Aspect of Treatment on August 20, 2019. ......................7

    6. Mischaracterization of August 27, 2019 Evaluation by Dr. Myers. ............................7

**ARGUMENT AND AUTHORITIES** ................................................................8

  **I.**  **Plaintiff's Complaint Violates Fed. R. Civ. P. 11** ........................................8

  **II.**  **Plaintiff's Counsel's Misconduct Warrants Severe Sanctions.**...................11

         A. Degree of Prejudice to Defendants. .................................................13

         B. The Amount of Interference in the Judicial Process. .......................14

         C. The Culpability of the Litigant**.**.....................................................14

         D. Prior Warning.................................................................................15

         E. Efficacy of Lesser Sanctions. .........................................................15

  **III. Plaintiff's Counsel's Bad Faith Conduct Justifies Sanctions Under
       this Court's Inherent Power.** ......................................................................16

  **IV. Sanctions under 28 U.S.C. §1279 are Additionally Warranted.** ..................17

**CERTIFICATE OF COMPLIANCE WITH RULE 11(c)(2)** .................................17

**CONCLUSION** ...............................................................................................18

i

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anderson v. Beatrice Foods Co.*,
    900 F.2d 388 (1st Cir. 1990) ............................................................................11

*Aoude v. Mobil Oil Corp.*,
    892 F.2d 1115 (1st Cir. 1989) ..........................................................................16

*Auto-Owners Inc. Co. v. Summit Park Townhome Ass'n*,
    886 F.3d 852 (10th Cir. 2018) ..........................................................................16

*Chavez v. City of Albuquerque*,
    402 F.3d 1039 (10th Cir. 2005) ........................................................................16

*Collins v. Daniels*,
    916 F.3d 1302 (10th Cir. 2019) ..........................................................................9

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ..........................................................................................12

*Eash v. Riggins Trucking, Inc.*,
    757 F.2d 557 (3d Cir. 1985) ..............................................................................16

*Ehrenhaus v. Reynolds*,
    965 F.2d 916 (10th Cir. 1992) ..............................................................12, 13, 16

*Ewing v. Wexford Health Source, Inc.*,
    2015 U.S. Dist. LEXIS 133926 (N.D. Ill. Oct. 1, 2015) ...................................10

*Herron v. Jupiter Transp. Co.*,
    858 F.2d 332 (6th Cir. 1988) ..............................................................................9

*King v. Fleming*,
    899 F.3d 1140 (10th Cir. 2018) ....................................................12, 13, 14, 15

*Lucas v. Turn Key Health Clinics, LLC*,
    58 F. 4th 1127 (10th Cir. 2023) ...........................................................3, 5, 6, 10

*Martinez v. Aaron*,
    570 F.2d 317 (10th Cir. 1978) ..........................................................................11

*Navarro-Ayala v. Nunez*,
    968 F.2d 1421 (10th Cir. 1992) ..................................................................11, 15

*O'Rourke v. Norman*,
    640 F. Supp. 1451 (W.D. Okla. May 7, 1986) ................................................................1, 10

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
    793 F.3d 1177 (10th Cir. 2015) ...........................................................................................9

*Rogler v. Std. Ins. Co.*,
    30 Fed. Appx 909 (10th Cir. 2006) ...................................................................................16

*Schrag v. Dinges*,
    1995 U.S. App. LEXIS 31949 (10th Cir. Nov. 14, 1995) .................................................10

*Steinert v. Winn Group, Inc.*,
    440 F.3d 1214 (10th Cir. 2006) .........................................................................................17

*Towerridge, Inc. v. T.A.O. Inc.*,
    111 F.3d 758 (10th Cir. 1997) ...........................................................................................16

*White v. Gen. Motors Corp.*,
    908 F.2d 675 (10th Cir. 1990) .............................................................................................9


## Statutes

18 U.S.C. § 1927 ...........................................................................................................1, 2, 17
28 U.S.C. § 1915 ...................................................................................................................11
42 U.S.C. § 1983 ........................................................................................................... passim
5 *Okla. Stat.* Chap. 1, App'x. 3-A, Rule 3.3 ...........................................................................1


## Court Rules

Fed. R. Civ. P. 11 ......................................................................................................... passim
Fed. R. Civ. P. 12 ...................................................................................................................3
N.D. Okla. LGnR 3-2 ..............................................................................................................1

## Other Authorities

Schwarzer, *Sanctions Under the New Federal Rule 11 – A Closer Look*,
104 F.R.D. 181 (1985) ..........................................................................................................11

Pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and this Court's inherent powers, Defendants, Turn Key Health Clinics, LLC, and Gary Myers, MD, respectfully submit this Motion for Sanctions for material misrepresentations made in Plaintiff's Complaint.  In support, Defendants state as follows:

<u>**INTRODUCTION**</u>

The duty of candor prohibits attorneys from knowingly making a false statement of fact or law to the Court. *See* 5 *Okla. Stat.* Chap. 1, Appx. 3-A, Rule 3.3; N.D. Okla. LGnR 3-2 (providing that attorneys before this Court are expected to abide by Oklahoma's Rules of Professional Conduct). Failure to comply with the duty of candor seriously "undermines the integrity of the adjudicative process." 5 *Okla. Stat.* Chap. 1, Appx. 3-A, Rule 3.3, cmt. 2; *see O'Rourke v. Norman*, 640 F. Supp. 1451, 1468 (W.D. Okla. May 7, 1986) (Rule 11 "allows the courts to combat those practices which tend to impose unjustified burdens on other parties, frustrate those who seek to vindicate their rights in the courts, obstruct the judicial process, and bring the civil justice system into disrepute."). This Court is empowered by law to take the actions necessary to protect the integrity of the Court and judicial system at large.  Here, the single remaining §1983 claim, asserted against Dr. Myers, rests on knowing misrepresentations and omissions of material fact, and sanctions are warranted.

Plaintiff's counsel received Michelle Caddell's medical records on February 11, 2020— more than nine months before Plaintiff filed her Complaint. (*See* Exhibit 1, Affidavit of Kathryn Pingleton; Exhibit 2, Medical Records Produced to Plaintiff's Counsel, p. 561).[1] Plaintiff was clearly familiar with Ms. Caddell's medical records and used these records in drafting her

---

[1] Plaintiff's counsel contends that it received only Ms. Caddell's medical records documenting care provided from April 1, 2019 onward. This is immaterial, however, as this Motion relies only upon records that Plaintiff admittedly received.

1

Complaint, as quotations from the medical records appear no fewer than ten times in the Complaint. *See* Doc. No. 2, ¶¶ 17, 19, 31, 32, 34-36, 38, 39 & 43. Yet, rather than disclose that Dr. Myers had prescribed Ms. Caddell a regimen of antibiotics and prescription painkillers over an extended course of time, Plaintiff instead chose to falsely allege that Dr. Myers merely prescribed Tylenol. (Doc. 2, ¶ 25). Similarly, rather than plead that Dr. Myers had ordered an ultrasound, performed a pelvic exam, and conducted an x-ray examination, Plaintiff chose to allege that he did nothing in response to her complaints and abnormal lab results. (Doc. 2, ¶¶ 22, 25). These are only two examples of several similar instances.  It is apparent that, in drafting the Complaint, counsel carefully "cherry picked" information from Turn Key medical records that appeared useful to Plaintiff's claims while misrepresenting or entirely omitting information in the records that undermined her claims.

There is no reasonable basis or evidentiary support for the false factual contentions in the Complaint, particularly as they relate to the single remaining deliberate indifference claim against Dr. Myers. The Turn Key medical records for Ms. Caddell were in Plaintiff's counsel's possession prior to filing this case, and rather than honestly portray the facts disclosed in the records, Plaintiff knowingly distorted the records of Caddell's care to sustain a §1983 claim.  Plaintiff has wasted the resources of this Court, of the Tenth Circuit Court of Appeals, and of the defendants in this case.  Sanctions are warranted under Fed. R. Civ. P. 11, 28 U.S.C. §1927, and this Court's inherent sanctioning power.

## **BACKGROUND**

1.      Plaintiff's counsel obtained possession of Michelle Caddell's jail/Turn Key medical records on February 11, 2020.  (*See* Exh. 1; Exh. 2, p. 561). Turn Key's medical records clerk within the Tulsa County Jail, Kathryn Pingleton has stated that all of Ms. Caddell's medical

records were provided to Plaintiff's counsel (Exh. 1); Plaintiff's counsel, however, has stated that Plaintiff received only those medical records dated April 1, 2019 and subsequent. This dispute has no material effect on this Motion, as Defendants rely only upon records dated from August 2019 and later.

2.      More than nine months later, on November 23, 2020, Plaintiff filed her Complaint, heavily referencing and quoting from these medical records. (Doc. 2).

3.      Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and Defendants' motions were granted on December 8, 2021.  (Doc. 44).

4.      Plaintiff appealed. The Tenth Circuit Court of Appeals affirmed in part and reversed in part, remanding the deliberate indifference claim asserted against Dr. Myers; dismissal of all other §1983 claims was affirmed.  *Lucas v. Turn Key Health Clinics, LLC*, 58 4th 1127 (10th Cir. 2023).

5.      On appeal, Plaintiff argued *inter alia* that this Court's decision dismissing the Complaint should be reversed because Dr. Myers provided "plainly inadequate" treatment to Ms. Caddell. (Appellant's Opening Brief, p. 23, *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023) (22-5002). At oral argument, Plaintiff's counsel affirmatively claimed that this was a "failure to treat" case. Plaintiff's contentions carried weight, as evident from the Tenth Circuit's Opinion remanding the claim against Dr. Myers:

> Unlike Self where a doctor misdiagnosed but treated symptoms consistent with multiple diagnoses over about two weeks, here **Dr. Myers dismissed Ms. Caddell's blood results and all the other concerning symptoms he was aware of by August 15 and did nothing else beyond possibly providing Tylenol**.

*Lucas*, 58 F.4th at 1141 (emphasis added). As described in greater detail below, the allegations that Dr. Myers "dismissed" Caddell's blood results and "all the other symptoms he was aware of by August 15" and "did nothing else beyond possibly providing Tylenol" are demonstrably false

(among many other allegations), and Plaintiff's counsel knew they were false when they were alleged.

## MATERIAL MISSTATEMENTS OF FACT

### 1.    Misrepresentations of Dr. Myers' Orders on August 5, 2019.

Complaint:  In paragraph 19 of the Complaint, Plaintiff alleges: "On August 5, 2019, Decedent was evaluated by Defendant Myers for left hip/groin pain and heavy intermenstrual bleeding. Defendant Myers determined that Decedent was not suffering from deep vein thrombosis ("DVT"). Concerned about her bleeding, Defendant Myers ordered blood work but noted that Decedent was a 'healthy menstruating woman with mild anemia.'" (Doc. 2, p. 5).

Medical Records:  Plaintiff's Complaint omitted that, also during the August 5, 2019 evaluation, Dr. Myers ordered an ultrasound in response to Ms. Caddell's complaints (Exh. 2, p. 161), and Dr. Myers prescribed Methocarbamol, a pain reliever and muscle relaxant, and Mobic, a further pain reliever, for Ms. Caddell. (Exh. 2, pp. 226-227). These omissions are particularly relevant in light of Plaintiff's allegation that Dr. Myers prescribed only Tylenol. (Doc. 2, p. 7).

### 2.    Misrepresentation of Culture Lab and Follow-Up and Further Omission of Medication Orders.

Complaint:  In paragraph 21 of the Complaint, Plaintiff alleges: "On August 10, 2019, Decedent put in another medical request for complaints of continuous vaginal discharge. In response, Nurse Chumley noted that Decedent had already been evaluated multiple times for complaints of irregular vaginal discharge. A culture of the discharge was ordered." (Doc. 2, p. 6).

Medical Records:  While Plaintiff alleges that "a culture … was ordered" on August 10, 2019, Plaintiff omits the fact that Dr. Myers ordered the culture. (Exh. 2, p. 131). Plaintiff further omits that Dr. Myers prescribed Doxycycline Monohydrate ("Monodox"), an antibiotic used to treat infections, on that same date. (Exh. 2, p. 131). Plaintiff also omits that Dr. Myers immediately

followed up on Ms. Caddell's lab work on August 8, 2019, noting that the results were abnormal as to the white blood cell count. (Exh. 2, p. 435).

### 3.   Misrepresentation of Myers' Notes in Medical Record and Omission of Care in Response to Complaints and Labs.

Complaint:  In paragraph 22 of the Complaint, Plaintiff alleges: "On August 14, 2019, the results of the blood work ordered by Defendant Myers revealed Decedent had leukocytosis, an elevation of the white blood cells indicating sickness. Nonetheless, Defendant Myers noted only that the lab results were normal, and that no follow-up was needed." (Doc. 2, p. 6).

Medical Records:  Dr. Myers visited with Ms. Caddell on August 14, 2019, and reviewed multiple diagnostic examinations with her. Dr. Myers noted that a bilateral lower extremity ultrasound performed on Ms. Caddell was "normal (no follow up needed)." (Exh. 2, p. 132). However, Dr. Myers recorded that the blood lab indicated "mild leukocytosis" and further noted: "Abnormal (Follow-up to be scheduled within 7 days) (seen by Myers 8/14)". (Exh. 2, p. 132). Plaintiff's allegation that Dr. Myers noted that the blood lab was normal and that no follow-up was needed is false.[2]

Plaintiff omits that Dr. Myers had already prescribed Doxycycline (Monodox), an antibiotic, on August 10, 2019, in response to this abnormal lab. (Exh. 2, p. 131). Plaintiff further omits the fact that, also on August 14, 2019, Dr. Myers noted that a pelvic exam needed to be performed due to Ms. Caddell's complaints (Exh. 2, p. 164-165) and, in fact, Dr. Myers scheduled and completed a pelvic exam the next day, on August 15, 2019, which is also omitted from the Complaint. (Exh. 2, p. 560). Dr. Myers found that Ms. Caddell's pelvic exam was normal, but prescribed Ms. Caddell with Ciprofloxacin HCL, an antibiotic; again, this is omitted from the

---

[2] This allegation is central to Plaintiff's claim against Dr. Myers, and it was clearly critical to the Tenth Circuit's decision to remand Plaintiff's claim against Dr. Myers. *Lucas*, 58 F.4th, at 1141.

Complaint. (Exh. 2, p. 230). Dr. Myers' order for Ciprofloxacin was subsequent to an order for Flagyl, which Dr. Myers changed on August 15, 2019 (Exh. 2, p. 229); this too was omitted from the Complaint.  This litany of treatment was entirely omitted by Plaintiff when discussing the care provided by Dr. Myers on August 14-15, 2019. (Doc. 2, ¶¶ 22-25).

### 4.    <u>False Allegations Regarding Dr. Myers' Medical Care up to August 15, 2019.</u>

<u>Complaint</u>:  Plaintiff alleges in paragraphs 24 to 25 of the Complaint:

24. By August 15, 2019, Defendant Myers and Jail staff were aware of the following regarding Decedent's medical condition:
  a.   She had been diagnosed with Chlamydia;
  b.   She had been complaining of ongoing hip/groin pain for weeks;
  c.   She had been complaining of ongoing, abnormal vaginal discharge for weeks;
  d.   She had been complaining of ongoing, irregular vaginal bleeding for weeks;
  e.   She had mild leukocytosis;
  f.   She had a heavy growth of E.Coli.; and
  g.   Her symptoms were becoming more severe, not less.

25. Despite these symptoms, Decedent was merely given Tylenol instead of being sent for further evaluation and diagnostic testing.

(Doc. 2, p. 7).[3]

<u>Medical Records</u>:  This allegation is, again, an objectively false representation of the medical record. In fact, by August 15, 2019, Dr. Myers had: prescribed Methocarbamol (a muscle relaxant and pain reliever) (*see* Exh. 2, pp. 226-227), Mobic (an additional pain reliever) (*see* Exh. 2, p. 227), Monodox (to treat possible infection indicated by mild leukocytosis) (*see* Exh. 2, p. 131), Flagyl and Ciprofloxacin HCL (to treat E.Coli positive discharge) (*see* Exh. 2, pp. 229-230, 560). Dr. Myers had also ordered and followed-up on an ultrasound (*see* Exh. 2, pp. 161, 132) and,

---

[3] This allegation is, again, central to the claim against Dr. Myers, and the Tenth Circuit Court of Appeals pointed to this allegation specifically in remanding the case. *Lucas*, 58 F.4th at 1134, 1140.

on August 15, 2019, performed a pelvic examination in response to Ms. Caddell's gynecological complaints (*see* Exh. 1, pp. 164-165, 560).

5.   <u>**Omission of Every Material Aspect of Treatment on August 20, 2019**</u>.

<u>Complaint</u>:   In paragraph 27 of the Complaint, Plaintiff alleges that "Despite continued complaints of irregular vaginal bleeding and discharge, Defendant Myers incorrectly noted on August 20, 2019 that Decedent's complaints had resolved." (Doc. 2, p. 7).

<u>Medical Records</u>:   This allegation, again, omits every material detail from Dr. Myers' treatment note of August 20, 2019. In fact, Dr. Myers noted that Caddell's chief complaint was "dribbling urine" and that "vaginal discharge has resolved with Cipro." (Exh. 2, p. 165).  Critically, this note contains a preliminary assessment from Dr. Myers that Caddell may be suffering from "interstitial cystitis," which is omitted from the Complaint. (Exh. 2, p. 166).[4] Plaintiff also omits the fact that Dr. Myers prescribed Ditropan on August 20, 2019, to treat Ms. Caddell's urinary complaints. (Exh. 2, pp. 231-232; 560).

6.   <u>**Mischaracterization of August 27, 2019 Evaluation by Dr. Myers**</u>.[5]

<u>Complaint</u>:   In paragraph 31 of the Complaint, Plaintiff alleges: "Defendant Myers evaluated Ms. Caddell on August 27, 2019. In his notes from the evaluation, Defendant Myers stated that Decedent 'has had frequent sick calls – some of which do not fulfill medical logic.'" (Doc. 2, p. 7).

---

[4] This suggests misdiagnosis, as opposed to indifference—which is consistent with Dr. Myers' course of evaluation and treatment.

[5] This series of misrepresentations focuses solely on Dr. Myers, but there are further material misstatements of the medical records in Plaintiff's Complaint. For instance, Plaintiff alleges that Ms. Caddell complained of 10/10 pain on October 3, 2019, but Plaintiff omits that Ms. Caddell was given a narcotic painkiller, Tylenol-3 (acetaminophen-Codeine), that same day in response. (Doc. 2, ¶ 29, Exh. 2, p. 246).

Medical Records:  In fact, Dr. Myers visited with Ms. Caddell on August 27, 2019, noting that her chief complaint was constipation. [6] (Exh. 2, p. 167).  Plaintiff omits that Dr. Myers ordered an X-ray of Ms. Caddell's abdomen to assess her complaints. (Exh. 2, p. 167-168). Additionally, Plaintiff omits that Dr. Myers prescribed Milk of Magnesia to address Ms. Caddell's complaints of constipation. (Exh. 2, pp. 167, 236). Plaintiff further omits that the X-ray was noted to be normal on August 29, 2019. (Exh. 2, p. 138).

## ARGUMENT AND AUTHORITIES

### I.     Plaintiff's Complaint Violates Fed. R. Civ. P. 11.

This is not a case in which Plaintiff faced an information disadvantage from the outset, and had to piece together the Complaint with little information available. Rather, Plaintiff and her counsel were in possession of Caddell's jail medical records well before the filing of the Complaint, and evidently used these records in crafting the Complaint. (Exh. 1, Exh. 2, p. 561). The misrepresentations in the Complaint show that Plaintiff's counsel knew the facts and, fearing that the true facts may undermine her claims, consciously chose to misconstrue certain facts, and falsely allege others, in the hopes of sustaining a §1983 claim.

Plaintiff's counsel's conduct in drafting this Complaint squarely violates Rule 11.  Rule 11 provides, in relevant part that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> …

---

[6] By omitting the fact that Caddell's chief complaint was for "constipation" on August 27, 2019, Plaintiff implies that this visit related to the gynecological symptoms within the Complaint.

(**3**) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery …

Under Rule 11, the Court "evaluate[s] [an attorney's] conduct under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Collins v. Daniels*, 916 F.3d 1302 (10th Cir. 2019) (citing *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)).  A showing of bad faith is not required. *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990).  As the Sixth Circuit has observed: "Rule 11, as amended in 1983, replaced the prior good-faith standard of assessment with the more stringent reasonableness under the circumstances test, with the intent that a greater range of circumstances would trigger its violation." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988).

Plaintiff's counsel carried out its investigation, learned the facts relevant to Dr. Myers' treatment, and then used Ms. Caddell's medical records to deliberately misconstrue the material facts in order to plead a §1983 claim that could survive dismissal.  The instances outlined in the Material Misstatements of Fact ("MMOF") numbers 3 and 4 above are particularly egregious.  In MMOF No. 3, Plaintiff attempts to establish a deliberate indifference claim by falsely alleging that Dr. Myers ignored Caddell's abnormal lab work, even though the opposite is true—the records clearly indicate that Dr. Myers acknowledged the abnormal lab, reviewed the lab with Caddell, and prescribed medication to address the perceived issue. In MMOF No. 4, Plaintiff falsely alleges that Dr. Myers provided Caddell with only Tylenol in response to all of her complaints up to August 15, 2019; again, this is pled in an attempt to manufacture a deliberate indifference claim. In truth, Dr. Myers had prescribed Caddell with a panoply of medications to address her various reported symptoms and further, performed a pelvic examination to determine the root of Caddell's

9

issues. It is no coincidence that the Tenth Circuit's opinion remanding this matter focused heavily on these allegations. See *Lucas*, 58 F.4th at 1140. They are the foundation of Plaintiff's §1983 claim, and they are false.

Nor should Plaintiff's omission of material facts be excused. The failure to allege material facts of Dr. Myers' care, in the context of a §1983 medical indifference claim premised upon "inadequate treatment", is equivalent to alleging that the care was not given. Such omissions are equally misrepresentative of the true, material facts of the case. Had there not been omissions of fact, the reasoning of the Tenth Circuit would be significantly different.

The allegations pled were knowingly and deliberately false and misleading. No reasonable attorney could consider such a practice acceptable. As one Court has noted:

> To sign and submit a complaint containing false allegations of fact is a blatant violation of Federal Rule of Civil Procedure 11(b), specifically subparts (1) and (3) of the Rule. By signing and submitting the First Amended Complaint, Plaintiff has represented to the Court that his allegations are true. But if a number of the facts stated in the First Amended Complaint are false (as they appear to be), Plaintiff has committed fraud on the Court, and he has violated Rule 11(b).

*Ewing v. Wexford Health Source, Inc.*, 2015 U.S. Dist. LEXIS 133926, *5–6 (N.D. Ill., Oct. 1, 2015). False allegations in a Complaint warrant sanctions under Rule 11(b). "Rule 11 requires that an attorney act reasonably based on the information he learns from a prefiling investigation into the facts. If, after inquiry, the facts do not support the claims, counsel should not sign the Complaint. If he does so, he violates Rule 11." *Schrag v. Dinges*, 1995 U.S. App. LEXIS 31949, *46 (10th Cir. Nov. 14, 1995) (unpublished).

The conduct in this case is precisely what Rule 11 is designed curb. Rule 11 "allows the courts to combat those practices which 'tend to impose unjustified burdens on other parties, frustrate those who seek to vindicate their rights in the courts, obstruct the judicial process, and bring the civil justice system into disrepute.'" *O'Rourke*, 640 F. Supp. at 1468. The civil justice

system can function only if attorneys are held to their ethical duties of honesty and candor to the court—attorneys can hale a party into court under false allegations, secure in the knowledge that their allegations will go untested until significant expense and effort is wasted through litigation and discovery. The incentives for this misconduct are great, and the disincentives must be equally great. As Judge William Schwarzer, a preeminent commentator on Rule 11, has observed: "if judges turn from Rule 11 and let it fall into disuse, the message to those inclined to abuse or misuse the litigation process will be clear. Misconduct once tolerated, will breed more misconduct and those who might seek relief against abuse will instead resort to it in self-defense." Schwarzer, *Sanctions Under the New Federal Rule 11 – A Closer Look*, 104 F.R.D. 181, 182 (1985).

So prevalent is the abuse of the civil justice system in §1983 claims by prisoners, Congress has enacted statutory safeguards against abusive litigation, requiring District Courts to "screen" prisoner complaints to ensure the validity of the claims therein. *See* 28 U.S.C. §1915A; *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff's claims have only escaped such review because it is presumed that Plaintiff's counsel would abide by its ethical obligations and Rule 11.

## II.   <u>Plaintiff's Counsel's Misconduct Warrants Severe Sanctions.</u>

"The primary responsibility for choosing an appropriate sanction rests with the district court." *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (10th Cir. 1992). "The trial judge is best positioned to decide what sanction best fits a particular case or best responds to a particular episode or pattern of errant conduct." *Id.* (citing *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir. 1990)). The Advisory Committee Notes to Rule 11 state that the District Court retains "the necessary flexibility to deal appropriately with violations" of Rule 11.  The Court "has discretion

to tailor sanctions to the particular facts of the case, with which it should be well acquainted." Fed. R. Civ. P. 11, advisory committee's note to 1983 amendment.

The Tenth Circuit Court of Appeals has written that, "we do allow for dismissal with prejudice as a sanction. And we have good reason for that—district court judges need to be able to control their courtrooms. So dismissal with prejudice is an essential tool in the sanction toolbox." *King v. Fleming*, 899 F.3d 1140, 1149-1150 (10th Cir. 2018) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("Any interpretation [of Rule 11] must give effect to the Rule's central goal of deterrence.")).

In considering dismissal as a sanction, the Tenth Circuit Court of Appeals has directed District Courts to consider the following factors:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). Though this test originated outside of the Rule 11 context, the Tenth Circuit has endorsed use of these factors in analyzing whether dismissal with prejudice is appropriate under Rule 11. *See King*, 899 F.3d at 1150. These factors are "non-exhaustive" and "give district courts a roadmap…[b]ut they also give those district courts leeway to apply on-the-ground knowledge to decide the appropriateness of dismissal with prejudice." *Id.*

In *King*, Plaintiff's Complaint included a material allegation which quoted from an email that Plaintiff's counsel had reason to know had been altered; the Complaint also attached the altered email as an exhibit. *King*, 899 F.3d at 1143–1145. Following a Rule 11 notice, Plaintiff's counsel refused to amend the Complaint and refused to withdraw the email exhibit. *Id.* at 1146.

Under the *Ehrenhaus* factors, the Tenth Circuit affirmed dismissal of Plaintiff's action with prejudice as an appropriate sanction. *Id*. at 1151–1154.

There are marked similarities between *King* and the conduct in this case. Indeed, the only distinguishing fact is that the counsel in *King* included the email as an exhibit to the Complaint, which he had reason to know was fraudulent—the inclusion of which was certainly egregious, but would not have been necessary or material to the Complaint. There is no reason to believe that the outcome in *King* would have been different (and counsel's conduct would have been no less egregious) had he misrepresented the contents of the email within the Complaint without attaching it. This is precisely what Plaintiff's counsel has done in this case—falsely represent the contents of records underlying Plaintiff's claim in an attempt to plausibly state a claim.

As in *King*, every one of the *Ehrenhaus* factors favors dismissal as a sanction for Plaintiff's counsel's misconduct.

A. Degree of Prejudice to Defendants.

"The more the misconduct prejudiced the opposing party, the more appropriate dismissal becomes as a sanction." *King*, 899 F.3d at 1151. The Defendants, Dr. Myers and Turn Key, have been subject to great prejudice by Plaintiff's misconduct. Defendants have been forced to litigate against Plaintiff's knowingly untruthful allegations for nearly two years, both before this Court and the Tenth Circuit—efforts that likely would not have been expended had Plaintiff truthfully pled this Complaint. *See King*, 899 F.3d at 1151 ("We have no question that the complaint (and its Exhibit 2) prejudiced the Defendants in a real way. … Defendants have been forced to litigate a case that would not have proceeded without the presence of the manipulated document and the associated allegation.").

13

B.  <u>The Amount of Interference in the Judicial Process.</u>

Presenting a Complaint with untruthful allegations already constitutes interference in the judicial process—it is the exact kind of abuse of the judicial process that Rule 11 is specifically designed to curb. The fact that Plaintiff's false and misrepresentative allegations are *material* to the underlying §1983 compounds the degree of interference. The materiality of Plaintiff's false allegations is demonstrated by the Tenth Circuit's opinion remanding this case—the very allegations most stressed by the Tenth Circuit are utterly contradicted by the medical records relied upon by Plaintiff to draft the Complaint. Moreover, this is not a case, as in *King*, where there is only one allegation at issue—the sheer volume of Plaintiff's misrepresentations and false allegations should be taken into account. In this sense, Plaintiff's counsel's conduct is more egregious than that at issue in *King*.

C.  <u>The Culpability of the Litigant.</u>

The culpability of the litigant is "key" to the determination of whether dismissal is appropriate. *King*, 899 F.3d at 1152. Dismissal with prejudice is an appropriate sanction "only in cases of willful misconduct." *Id*. at 1149. Plaintiff's counsel's careful misrepresentation of the facts within its Complaint was willful and calculated. Culpability cannot be doubted.

Plaintiff's counsel is experienced in §1983 litigation and aware that federal pleading standards do not permit broad allegations of wrongdoing. To this end, counsel obtained Caddell's jail medical records and sifted through them carefully to pull out details that would give the Complaint a sheen of plausibility, all the while omitting most details of treatment and—much worse—crafting false allegations regarding the portions of medical care that most undermined a potential claim. This behavior transgresses all bounds of acceptable attorney conduct and satisfies

14

the culpability factor of the analysis. Again, the quantity of the falsities in the Complaint further underscore counsel's culpability.

### D. Prior Warning

The Tenth Circuit has noted that "Rule 11 has its own notice requirement, rendering this factor…superfluous." *King*, 899 F.3d at 1153. Plaintiff has stood by its false allegations, necessitating this Motion.

### E. Efficacy of Lesser Sanctions

"The imposition of a Rule 11 sanction usually serves two main purposes: deterrence and compensation." *Navarro-Ayala*, 968 F.2d at 1426. At issue here is deterrence; the District Court in *King* noted particular concern that "without dismissal, [counsel] would continue to abuse the judicial process by using altered evidence and thus continue to drain judicial resources." *King*, 899 F.3d at 1153. This Court should also consider the deterrent effect of the sanction on others who may be inclined to similar misconduct, especially given the harm to the judicial system that results from untruthful pleadings.

As noted, Plaintiff's counsel is experienced in §1983 litigation. Without the harshest of sanctions available, it is all too likely that Plaintiff's counsel, and others in its position, will be tempted to repeat the same actions—especially given the monetary incentives to engage in such misconduct. Harm results not just to private litigants, but also to the public at large who are so often responsible for footing the bill in such lawsuits.

Given the above, it is respectfully submitted that nothing less than dismissal with prejudice of Plaintiff's claim will effectively discourage similar conduct in the future.

### III.   Plaintiff's Counsel's Bad Faith Conduct Justifies Sanctions under this Court's Inherent Power.

This Court's inherent authority to sanction bad faith litigation conduct is one of this Court's "implied powers… which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043 (10th Cir. 2005). This sanctioning power provides this Court, "the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner." *Aoude v. Mobil Oil Corp*., 892 F.2d 1115, 1119 (1st Cir. 1989). This inherent sanctioning power includes "the ability to do whatever is reasonably necessary to deter abuse of the judicial process." *Id.* (citing *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (en banc)). This Court's sanctioning powers are appropriately employed "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rogler v. Std. Ins. Co*., 30 Fed. App'x. 909, 914 (10th Cir. 2002). This extends to a party's "bad faith in bringing an action or in causing an action to be brought." *Towerridge, Inc. v. T.A.O. Inc.*, 111 F.3d 758 (10th Cir. 1997).

The Tenth Circuit has further noted that "a court may impose sanctions by means of the inherent power even if the conduct could also be sanctioned under the Rules." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 858 (10th Cir. 2018). As such, this Court's inherent sanctioning power is an alternative, independent basis upon which sanctions may be imposed upon Plaintiff for the bad faith misconduct evident in the crafting of Plaintiff's Complaint. The *Ehrenhaus* factors, discussed above, may also be employed to determine if dismissal is an appropriate sanction pursuant to this Court's inherent authority. *Chavez*, 402 F.3d at 1044. Given Plaintiff's willful misrepresentation of the facts of this case and the argument above, severe sanctions, up to and including dismissal of Plaintiff's claims, are warranted.

16

**IV.**     **Sanctions under 28 U.S.C. §1927 are Additionally Warranted.**

Under 28 U.S.C. §1927, "[a]ny attorney… who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Tenth Circuit has noted that §1927 sanctions are "appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings was unwarranted." *Steinert v. Winn Group, Inc*., 440 F.3d 1214, 1221 (10th Cir. 2006).  Any and all of these bases for §1927 sanctions fairly characterize the misconduct in this matter: in filing its dishonest pleading with the Court, counsel has demonstrated indifference to the law and its own ethical obligations, has misled the court, and has knowingly made assertions that were without a plausible basis and were unwarranted.  Defendant Myers requests an award of his reasonable costs and attorney's fees expended in this action.

## CERTIFICATE OF COMPLIANCE WITH RULE 11(C)(2)

Undersigned counsel certifies that this Motion was served upon Plaintiff's counsel on March 30, 2023. Plaintiff's counsel has refused to correct or withdraw the challenged contentions within 21 days after service of this Motion. Plaintiff's counsel responded with arguments that are immaterial to the ultimate issues raised within this Motion. For example, Plaintiff's counsel contends that the details of Dr. Myers' treatment were not relevant to Plaintiff's claim because Plaintiff's claims were based upon Dr. Myers' failure to refer Ms. Caddell, not his failure to treat her. On appeal, the Tenth Circuit panel directly asked Plaintiff's counsel if Plaintiff was only alleging a failure to refer claim; counsel directly stated that Plaintiff's claim was not limited to a failure to refer claim but also encompassed Dr. Myers' alleged failure to treat Ms. Caddell. Plaintiff cannot, consistent with Rule 11, bring a §1983 claim based upon Dr. Myers' alleged failure to treat

Ms. Caddell while also knowingly omitting every detail of Dr. Myers' treatment. Lastly, Plaintiff's counsel maintains that Plaintiff received medical records from April 1, 2019 and subsequent. This discrepancy is not material; Plaintiff admittedly received all records at issue in this Motion.

## CONCLUSION

WHEREFORE, Defendants Gary Myers, MD, and Turn Key Health Clinics, LLC respectfully move this Court to enter sanctions and dismiss Plaintiff's claims with prejudice to refiling. Should this Court find that dismissal is not an appropriate sanction, Defendants move this Court to impose any lesser sanction that this Court deems appropriate.

Respectfully Submitted,

   /s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
401 S. Boston Ave., Suite 3200
Tulsa, OK  74103
Telephone: (918) 583-7571
Facsimile:  (918)584-7846

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II
Jack Warren

   /s/ Jo Lynn Jeter
**Jo Lynn Jeter**