# United States District Court
## for the Northern District of Oklahoma

Case No. 20-CV-601-JDR-CDL

Yolanda Lucas, *as special administrator of* The Estate of Michelle Ann Caddell, Deceased,

*Plaintiff*,

versus

Turn Key Health Clinics, LLC; Vic Regalado, *individually and in his official capacity as Tulsa County Sheriff*; Shirley Hadden; and Gary Myers, M.D.,

*Defendants*.

## OPINION AND ORDER

The question before this Court is whether a plaintiff seeking relief under 42 U.S.C. § 1983 for failure to provide adequate medical care in violation of the Eighth and Fourteenth Amendments should be sanctioned for failing to allege in her complaint a complete statement of *all* treatment provided by the defendants. *See* Dkt. No. 62 at 8-12;[1] Dkt. No. 67 at 3 (arguing that plaintiff was "ethically obligated to disclose the treatment that Dr. Myers actually provided"). For the reasons set forth below, the Court answers that question in the negative, and DENIES Defendants' Motion for Sanctions [Dkt. No. 62].

Plaintiff Yolanda Lucas, acting as administrator of the estate of Michelle Ann Caddell, alleges that Defendant Gary Myers, M.D. and his employer, Turn Key Health Clinics, LLC, were deliberately indifferent to the

---

[1] All page citations utilize CMECF pagination.

No. 20-CV-601

serious medical needs of Ms. Caddell while she was an inmate at the Tulsa County Jail. Dkt. No. 2.[2] Ms. Caddell became an inmate at the Tulsa County Jail following her arrest on December 27, 2018. Dkt. 2 at ¶ 13. According to the Complaint [Dkt. No. 2], Ms. Caddell tested positive for Chlamydia in January 2019, approximately one month after being admitted to the jail. Dkt. No. 2 at ¶¶ 13-14. In June 2019, she began raising health concerns to Dr. Gary Myers, who was employed by Turn Key, the jail's third-party medical provider. *Id.* at ¶¶ 2, 6, 15. Her concerns included complaints of vaginal discharge; hip, thigh, groin, and abdominal pain; and heavy intermenstrual bleeding. *Id.* at ¶¶ 15-21, 26, 28, 29, and 32. In addition, Ms. Caddell was diagnosed with mild leukocytosis, a condition usually indicative of illness, and heavy growth of the bacteria Escherichia Coli in her vaginal discharge. *Id.* at ¶¶ 22, 23.

On September 15, 2019, Ms. Caddell spoke with a nurse regarding her ongoing discharge and pain. *Id.* at ¶ 34. The nurse referred Ms. Caddell to a gynecologist,[3] but the referral was cancelled on the grounds that her "excessive amount of vaginal bleeding need[ed] to be verified" before she could see the specialist. *Id.* at ¶¶ 34-37. Testing conducted on September 23, 2019, indicated that Ms. Caddell was experiencing abnormal uterine bleeding and her hemoglobin levels had dropped sharply over a six-week period. *Id.* at ¶ 37. Ms. Caddell was permitted to see the gynecologist, Dr. Aktar Hameed. *Id.* at ¶ 38. Dr. Hameed's exam on September 27, 2019, revealed that Ms. Caddell's cervix was "friable, irregular, hypertrophied, and with degenerating tissue extending to posterior vaginal vault." *Id.* at ¶ 38. He opined that Ms. Caddell

---

[2] Ms. Lucas originally asserted claims against additional parties. Dkt. No. 2. Following the appeal of this Court's order granting the original defendants' motions to dismiss, the remaining defendants are Dr. Myers, Turn Key Health Clinics, LLC, Vic Regalado, and Shirley Hadden. Dkt. Nos. 44, 52.

[3] The Complaint uses "obstetrician" rather than "gynecologist"; the Court uses the latter term, as the former applies only to medical professionals who provide care during and in connection with a pregnancy.

No. 20-CV-601

was probably suffering from invasive cervical cancer. *Id.* A pap smear conducted on October 6, 2019, revealed atypical squamous cells. *Id.* ¶ at 40.

Although a second pap smear was ordered, it was not conducted at the jail because Ms. Caddell's condition deteriorated: On October 30, 2019, she began discharging tissue from her vagina and was losing enough blood to soak through a menstrual pad every twenty minutes. *Id.* at ¶ 42. Ms. Caddell was transferred to an external hospital, where she was diagnosed with stage 3 squamous cervical carcinoma, extensive necrosis, and deep vein thrombosis. *Id.* at ¶¶ 42-48. Ms. Caddell was released from incarceration to seek treatment for her illnesses. *Id.* at ¶46. Treatment was unsuccessful, and Ms. Caddell succumbed to cancer on August 16, 2020. *Id.* at ¶ 49.

The Complaint specifically alleges that, by August 15, 2019, Dr. Myers was aware of Ms. Caddell's diagnosis of Chlamydia, her ongoing complaints of hip and groin pain, her ongoing abnormal vaginal discharge with a heavy growth of E. coli, her leukocytosis, and the fact that these symptoms were getting more severe, not less. *Id.* at ¶ 24. The Complaint further alleges that "[d]espite these symptoms, [Ms. Caddell] was merely given Tylenol instead of being sent for further evaluation and diagnostic testing." *Id.* at ¶ 25. Plaintiff claims Dr. Myers should have known that Ms. Caddell's serious and emergent medical issues required immediate evaluation and treatment, that Dr. Myers "denied, delayed, and obstructed" the necessary treatment, and that his actions "constitute[d] deliberate indifference to [Ms. Caddell's] serious medical needs" in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at ¶¶25, 70, 106-11.[4]

Dr. Myers and Turn Key moved to dismiss Plaintiff's Complaint, arguing Dr. Myers was not deliberately indifferent to an obvious medical risk

---

[4] "A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. The deliberate indifference standard applies to pretrial detainees, such as Ms. Caddell, through the Fourteenth Amendment." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023) (citations and quotation marks omitted).

because he "regularly evaluated and treated" Ms. Caddell. Dkt. No. 19 at 19; Dkt. No. 22 at 17. Defendants argued that, while there might be disagreement as to whether Dr. Myers's treatment methods were proper, mere disagreement over appropriate treatment does "not rise to the level of a constitutional claim." Dkt. No. 19 at 19; Dkt. No. 22 at 17. This Court originally agreed, concluding that Plaintiff "fail[ed] to state a claim for deliberate indifference" because "the Complaint itself recite[d] a litany of treatment provided by" Dr. Myers. Dkt. No. 44 at 14.

The Tenth Circuit reversed this Court's order dismissing Plaintiff's deliberate indifference claim.[5] In doing so, it noted that a deliberate indifference claim has two components: an objective component, which is established if the medical need is sufficiently serious, and a subjective component, which is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety." *Lucas*, 58 F.4th at 1136, 1137 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Court of Appeals went on to explain that the subjective component may be established under one of two theories: the failure to properly treat theory, which requires a showing that a medical provider failed to properly treat a serious medical condition, and the gatekeeper theory, which requires a showing that the medical provider prevented the inmate from receiving treatment or receiving access to someone who could have evaluated the need for treatment. *Id.* at 1137-39.

The Court of Appeals concluded that Plaintiff had alleged sufficient facts to establish the subjective component of her claim under either theory.[6] *Id.* at 1140-43. It held that, with respect to the failure to treat theory, the Complaint painted a picture that Dr. Myers did not take Ms. Caddell's complaints seriously, as evidenced by Dr. Myers's decision to treat those complaints with

---

[5] The Court affirmed this Court's dismissal of Plaintiff's *Monell* and equal protection claims against Turn Key and former defendant Sheriff Regalado. *Lucas* 58 F.4th at 1144-46.

[6] On appeal, Defendants conceded that the objective component was satisfied. *Lucas*, 58 F.4th at 1136.

Case 4:20-cv-00601-JDR-CDL   Document 82 Filed in USDC ND/OK on 03/04/24   Page 5 of 11

No. 20-CV-601

Tylenol, his suggestions that Ms. Caddell's complaints were fabricated, his failure to evaluate the effectiveness of his treatment plan, and his failure to make a referral that a nurse made based the information available to Dr. Myers. *Id.* ("More to the point, Dr. Myers entirely failed to monitor [Ms. Caddell] afterwards to determine if his treatment plan, if it can even be described as such, was working.").

With respect to the gatekeeper theory, the Court of Appeals concluded that Plaintiff's allegations were sufficient to establish Dr. Myers's duty to refer Ms. Caddell to appropriate medical personnel by September 3, 2019. *Id.* at 1142-43. The Court recognized that, by that date, Dr. Myers was allegedly aware of Ms. Caddell's "ongoing, serious symptoms of excessive vaginal bleeding, discharge, and pain." *Id.* The fact that these symptoms were worsening, rather than improving, "suggest[ed] it was obvious Ms. Caddell needed to be referred to a specialist medical personnel capable of evaluating her needs." *Id.* at 1143.

Now that the case has returned to us, Defendants ask this Court to sanction Plaintiffs for allegedly omitting crucial information and distorting the records of medical care provided to Ms. Caddell, thereby wasting the resources of this Court, the Court of Appeals, and the Defendants. Dkt. No. 62 at 6. Specifically, Defendants argue that Plaintiff's Complaint omits the following facts, and for doing so Plaintiff must be sanctioned: that Dr. Myers: (1) performed an ultrasound of Ms. Caddell's lower extremity on August 5, 2019; (2) prescribed pain relievers, muscle relaxants, milk of magnesia (for constipation), and other medication (to treat possible infection); (3) ordered a culture of Ms. Caddell's vaginal discharge on August 10, 2019;[7] (4) noted Ms. Caddell's lab work on August 8, 2019, was "abnormal as to the white blood cell count"; (5) noted that Ms. Caddell's blood work on August 14, 2019, indicated mild leukocytosis and required a follow-up; (6) completed a pelvic

---

[7] The Complaint notes that the culture was ordered; Defendants take issue with Plaintiff's failure to state that Dr. Myers ordered it. Dkt. No. 62 at 8.

exam, which was normal, on August 15, 2019; (7) prescribed Ditropan to treat Ms. Caddell's dribbling urine; (8) preliminarily indicated Ms. Caddell might be suffering from internal cystitis; and (9) ordered an X-ray, which was normal, on August 27, 2019. Dkt. No. 62 at 8-12.

Defendants argue that these omissions were material because they indicate Dr. Myers provided a "panoply of medications" to address Ms. Caddell's symptoms. *Id.* at 13. They contend these omissions directly contradict Plaintiff's allegations that Dr. Myers "prescribed only Tylenol" in response to Ms. Caddell's concerns, incorrectly characterized Ms. Caddell's lab work as normal, and incorrectly concluded Ms. Caddell's complaints had resolved by August 20, 2019. Dkt. No. 62 at 8 (quoting Dkt. No. 2 at ¶ 25); *id.* at 9,11, 13. Defendants contend that Plaintiff deliberately omitted crucial facts and mischaracterized evidence as part of a ploy to preserve a § 1983 claim that would have been unsustainable if the true facts were alleged. *Id.* at 12-14.

Before addressing the merits of Defendants' arguments, a brief overview of a party's obligations under Rules 8 and 11 of the Federal Rules of Civil Procedure is warranted. Under Rule 8(a)(2), a party need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule sets an upper limit as to what should be included in a pleading. *Toevs v. Reid*, 267 F. App'x 817, 818 (10th Cir. 2008) (recognizing that Rule 8(a) "establishes a ceiling…and not a floor" (citation and quotation marks omitted)); *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (unpublished). A party need not, and should not, "plead detailed facts or state particular theories for recovery. It is sufficient, *and indeed all that is permissible*, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis." *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957) (emphasis added). Thus, this Court has dismissed pleadings that include unnecessary and extraneous allegations. *E.g., Low v. Chu*, No. 09-CV-398-CVE-

PJC, 2009 WL 3104040, at *1 (N.D. Okla. Sept. 21, 2009) (dismissing a thirty-seven-page complaint that "exceed[ed] the bounds of a generalized statements of facts and therefore [did] not satisfy Rule 8(a)(2)").

By signing a pleading, a party's attorney affirmatively certifies that, to the best of his or her knowledge, information, and belief formed after reasonable inquiry, (1) the pleading is not being presented for an improper purpose, (2) the claims and legal contentions presented are warranted by either existing law or a nonfrivolous argument for changing the law, (3) the factual contentions have, or will have, evidentiary support, and (4) any denials of factual contentions will have similar support. Fed. R. Civ. P. 11(b). Rule 11 requires an attorney to act reasonably based on the information he or she discovers when investigating the facts giving rise to asserted claims. *Schrag v. Dinges*, 73 F.3d 374, 1995 WL 675475, at *12 (10th Cir. 1995) (unpublished). It is not reasonable to submit a complaint where the allegations are not supported by facts, *id.* at *13, and the failure to disclose a fact that could bar a claim may be sanctionable. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990) (affirming sanctions where the plaintiffs ignored releases that would have barred the suit).

It does not follow, however, that a party's pleading must disclose all facts that favor the other side. *Navarro–Ayala v. Hernandez–Colon*, 3 F.3d 464, 467 (1st Cir.1993) ("Rule 11 normally does not require one party to uncover and to set forth the facts that support the other side's position."). *See Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104-05 (10th Cir. 1993) (finding no violation in a party's failure to disclose disagreement by experts, and recognizing it is the obligation of opposing counsel to expose weaknesses in evidence relied upon in a pleading). Nor does Rule 11 penalize a party for submitting a pleading that could have been phrased more artfully or contains disputed facts. *See Navarro-Ayala*, 3 F.3d at 467 (recognizing the challenged statement was not literally false, although it could be classified as an overstatement, and concluding that even if the statement were inaccurate, "Rule 11 neither penalizes

overstatement nor authorizes an overly literal reading of each factual statement").[8] Ultimately, the question of whether sanctions should be imposed does not turn on the question of whether a pleading could have been more complete or phrased more clearly; so long as a party's actions are objectively reasonable, Rule 11 sanctions are not warranted. *White*, 908 F.2d at 680. With these standards in mind, the Court turns to Defendants' argument that Plaintiff fraudulently omitted crucial facts from the Complaint.

The Court sees Defendants' motion as misconstruing the nature of Plaintiff's allegations. Plaintiff is not arguing that Dr. Myers failed to provide *any* medical care; she is alleging that Ms. Caddell's obvious and apparent symptoms would have alerted any reasonable physician that Ms. Caddell needed "immediate and emergent evaluation and treatment" and referral to a gynecologist, and that Dr. Myers denied, delayed, and obstructed the provision of *proper care that should have been provided* in the face of Ms. Caddell's known—and very serious—symptoms. Dkt. No. 2 at ¶¶ 33, 108. *See Lucas*, 58 F.4th at 1137 (recognizing that, while alleging that a doctor did nothing is "obviously sufficient to state a claim," a doctor is not insulated from liability by providing some care without reference to the underlying condition).[9]

Given the thrust of Plaintiff's Complaint, Plaintiff's omissions—assuming they were intentional[10]—were reasonable. Plaintiff was required only

---

[8] *Tso v. Murray*, No. 16-CV-02480-WJM-STV, 2018 WL 684767, at *2-*3 (D. Colo. Feb. 1, 2018), aff'd, 760 F. App'x 564 (10th Cir. 2019) (concluding that the defendants had an objectively reasonable basis for their contention, despite contrary evidence presented by plaintiffs, and denying sanctions where the question of whether the use of "absconded" was appropriate was one of semantics).

[9] *See also Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) (concluding that the delay in obtaining specialized medical care for the plaintiff's blackening and necrifying tissue met the objective element of the deliberate indifference test, despite the defendant's examination of the injury and his treatment with pain medication); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (concluding that the fact that the prisoner had "seen numerous doctors" did not "necessarily mean that he received treatment for serious medical needs").

[10] The Court finds that the evidence does not support Defendants' contention that the alleged omissions were made knowingly or in bad faith. For example, Defendants

No. 20-CV-601

to show that Dr. Myers failed to provide *proper* treatment or failed to *provide access* to someone capable of properly treating her. *Lucas*, 58 F.4th at 1137. A plaintiff can make this showing by alleging that a medical provider failed to take complaints seriously, failed to monitor a treatment plan for effectiveness, or failed to take action that was manifestly necessary under the circumstances. *E.g., id.* at 1141-42; *Oxendine*, 241 F.3d at 1279. It is not necessary—indeed, it is not appropriate—to require a plaintiff to provide a full and detailed summary of *all* treatment provided by a defendant when the plaintiff's claim turns on the denial of *proper* treatment. It is sufficient that the plaintiff set forth a short and plain statement of facts demonstrating that the *proper* treatment or referral was not provided. *Toevs*, 267 F. App'x at 818; *Frazier*, 2007 WL 10765, at *2. In this case, Plaintiff alleges that Ms. Caddell was denied emergent gynecological care necessary to diagnose and treat the cancer that killed her. As ultrasounds of lower limbs, painkillers, and antibiotics, and the other actions purportedly taken by Dr. Myers do not constitute the emergent gynecological care that Plaintiff alleges she should have received and was improperly denied, the Court will not sanction Plaintiff for failing to specifically include such treatment in her Complaint.

The Court next turns to Defendant's assertion that Plaintiff affirmatively misrepresented facts when she alleged Dr. Myers "prescribed only Tylenol" in the face of the symptoms known to him on August 15, 2019. Dkt. No. 2 at ¶ 25; Dkt. No. 62 at 8-12. Defendants argue that Plaintiff fraudulently omitted the many medications and treatments provided prior to that date. Dkt. No. 62 at 8-10. Plaintiff responds that paragraph 25 of the Complaint is not intended to allege that Dr. Myers had not provided *any* treatment for her complaints *prior* to August 15, 2019. Dkt. No. 65 at 23. Instead, paragraphs 24

---

challenge Plaintiff's statement that Dr. Myers improperly concluded Ms. Caddell's lab results were normal when, in fact, he characterized them as abnormal. Dkt. No. 67 at 5. The records available for the Court's review are not a model of clarity, and. the Court will not sanction a party for what could easily be a mere misinterpretation. Without some evidence of an intentional misrepresentation, the Court is unwilling to sanction based on this record.

and 25 of the Complaint are intended to demonstrate that, while Dr. Myers was aware of at least six serious symptoms as of August 15, 2019, he failed to take appropriate steps to treat *those symptoms* after that date. *Id.* Thus, Plaintiff argues, there was no need to enumerate all of the items identified in Defendant's Motion. *Id.*[11] The Court concludes that the allegation is susceptible to each party's interpretation. Under the construction proposed by Plaintiff, it was unnecessary for Plaintiff to recite the antibiotics, painkillers, and treatments provided prior to August 15. Although Plaintiff's allegations could have been more precise, that does not render the allegation false, let alone unsupported or sanctionable. *See Navarro-Ayala*, 3 F.3d at 467; *Tso*, 2018 WL 684767.

With respect to the final two false statements identified in Defendants' motion, the Court rejects Defendants' contention that Plaintiff misled the Court by alleging that Dr. Myers (1) disregarded Ms. Caddell's abnormal lab work and (2) incorrectly concluded that Ms. Caddell's complaints had resolved by August 20, 2019. Dkt. No. 62 at 9; *id.* at 11. The former alleged misrepresentation appears to be, at most, a simple error in interpreting voluminous medical records; the Court will not sanction Plaintiff for misinterpreting Defendants' documents. *See supra* at n.10. With respect to the latter, the Court does not find, based on the record before it, that Plaintiff's statement is demonstrably false. Dr. Myers concluded on August 20, 2019, that

---

[11] Defendants note that, after August 15, Dr. Myers prescribed milk of magnesia (for constipation) and Ditropan (for dribbling urine); conducted an abdominal X-ray to assess Ms. Caddell's claims of constipation; and noted that Ms. Caddell might be suffering from interstitial cystitis. Dkt. No. 62 at 12-13; Dkt. No. 62-2 at 138, 166, 167-68. The Court finds that Plaintiff's allegation in paragraph 25 is not rendered false or misleading by the omission of these later treatments. The medications and X-ray were not provided in response to the symptoms set forth in paragraph 24, and a notation in a chart regarding a potential cause of symptoms is not treatment. The record could reasonably support the allegation that Dr. Myers did not prescribe any non-Tylenol medication for the concerns identified in paragraph 24 after August 15, 2019. *See* Dkt. No. 62 at 11 (recognizing that certain complaints had resolved with Cipro, but not specifically alleging when the Cipro was prescribed); *id.* at 11, n. 5 (noting prescription of Tylenol-3).

No. 20-CV-601

Ms. Caddell's vaginal discharge "[had] resolved with Ciro [sic]." Dkt. No. 62-2 at 165. Ms. Caddell's medical records indicate that the discharge continued after that date. *Id.* at 136, 140. Plaintiff's allegation is not demonstrably false, let alone sanctionable.

After a thorough review of Defendants' Motion and associated briefing, as well as the voluminous records associated therewith, the Court finds no basis for concluding that Plaintiff's factual allegations lack evidentiary support or were submitted for an improper purpose in violation of the Federal Rules. Fed. R. Civ. P. 11. Nor does the Court conclude that the allegations were misleading, lacked a plausible basis, or otherwise resulted in the unreasonable multiplication of proceedings in a manner that warrants relief under 28 U.S.C. § 1927. To the contrary, the Court finds that Plaintiff's allegations, while not perfect, were objectively reasonable in view of the medical records and evidence available. In view of this finding, sanctions are not warranted Defendants' Motion or Sanctions, [Dkt. No. 62] is DENIED.

DATED this 4th day of March 2024.

_____
JOHN D. RUSSELL
*United States District Judge*